## Pusey Estate.

Argued March 31, 1952. Before DREW, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Thomas P. Mulvaney,* with him *C. M. Murphy,* for appellants.

*Robert Gill Walker* and *S. M. Kier,* with them *Wm. F. Knoell, Shoemaker & Knoell, John C. Bane, Jr., Reed, Smith, Shaw & McClay, James H. Beal, Jr.,* and *Walter T. McGough,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, May 27, 1952:

This is an appeal from an order of the Orphans' Court of Allegheny County dismissing appellants' exceptions to the second and partial account of the Allegheny Trust Company, trustee of a trust established by the will of George W. Pusey.

The decedent died August 31, 1933. His last will and testament provided: "Fourth: I give, devise and bequeath unto my executors and trustees hereinafter named, the sum of One Million Dollars ($1,000,000), in trust, for the following uses and purposes, to wit: To invest the same in such securities as they may see fit and to change such securities from time to time at their discretion, and to make new investments, and if they so desire, I also hereby authorize them to take and retain as investments for said fund, such of the securities now owned by me, or such portions of the same, at their appraised values, as they may see fit. And I hereby direct the said executors and trustees *to pay the income accruing on the said securities* in which the said sum of One Million Dollars ($1,000,000) shall be invested, quarterly, as follows: (a) To my cousins, Elizabeth C. Lavely, Mary B. Lavely and Susan A. Lavely, I give and bequeath the sum of One Thousand ($1000) Dollars annually, payable quarterly, for and

during the term of their respective natural lives and the life of the survivor. (b) To William Sepp, my chauffeur, if still in my employ at the time of my death, I give and bequeath the sum of Three Thousand ($3000) Dollars annually, payable quarterly, for and during the term of his natural life. (c) To my said housekeeper, Miss Katharine G. McIntyre, I give and bequeath the sum of Ten Thousand ($10,000) Dollars annually, payable quarterly, for and during the term of her natural life, and upon her death I direct that there shall be paid out of the said trust fund of One Million ($1,000,-000) Dollars, (1) the sum of Fifty Thousand ($50,000) Dollars to the Young Women's Christian Association of Pittsburgh, to provide an Endowment Fund for the Laughlin House Branch now located at No. 1006 North Lincoln Avenue, in said City of Pittsburgh, or to be added to the Endowment Fund of the said Laughlin House Branch, if one already exists; and (2) to the Allegheny Branch Of The Young Men's Christian Association Of Pittsburgh, the sum of Fifty Thousand ($50,000) Dollars, to provide an Endowment Fund for said Allegheny Branch, or to be added to the Endowment Fund of said Allegheny Branch, if one already exists. (d) To Alma Heazelton, widow of my cousin, Rev. J. D. W. Heazelton, of Freedom, Pennsylvania, and St. Cloud, Florida, I give and bequeath the sum of One Thousand ($1000) Dollars annually, payable quarterly, for and during the term of her natural life, and upon her death I direct that there shall be paid out of the said trust fund of One Million ($1,000,000) Dollars, the sum of Forty Thousand ($40,-000) Dollars to the Annuity Fund Of The Pittsburgh Annual Conference Of The Methodist Episcopal Church, the income of which is to be applied to the support of disabled and retired ministers of said Conference, according to the plan of said Annuity Fund. (e) The

said trustees shall pay to the Calvary Methodist Episcopal Church located at the southeast corner of Allegheny and Beech Avenues, in the said City of Pittsburgh, the sum of Twenty Thousand ($20,000) Dollars annually, payable quarterly, Five Thousand ($5,000) Dollars of which shall be paid by the said church to its Minister, or so much more than Five Thousand ($5,000) Dollars as would procure a Minister of ability who would attract people to the church and help increase the membership; the balance of the said sum of Twenty Thousand ($20,000) Dollars, after the salary of the Minister has been provided for, shall be used by the church for current church expenses, exclusive of the Minister's salary. In the event of the said Calvary Methodist Episcopal Church being closed and permanently abandoned as a house of worship, or should it be sold, then on the happening of either of said events before the death of any of the beforementioned legatees, the payment of the said sum of Twenty Thousand ($20,-000) Dollars, shall cease and determine, and the sum of One Hundred Thirty Thousand ($130,000) Dollars shall be paid out of the said trust fund of One Million ($1,000,000) Dollars to the Church Union Of The Methodist Episcopal Church Of Pittsburgh, Pennsylvania. If, at the time of the death of the last survivor of the said personal legatees, and after the payment of the sums provided for to the residuary legatees in said trust fund, there should be remaining in the said fund any balance, then and in that event I direct that the said balance be paid to the said Church Union Of The Methodist Episcopal Church Of Pittsburgh, Pennsylvania." (Emphasis supplied)

The income from such trust since 1946 has been insufficient to meet the payments directed to be made therefrom, the deficiency amounting to $26,616.95. The trustee prorated the income available.

Two of the individual beneficiaries, William Sepp and Katharine G. McIntyre, (appellants here) make two contentions. First, they argue that an interpretation of the will shows that the testator intended that they be paid their respective annual amounts from income in full before payments to the Calvary Methodist Episcopal Church. Second, they submit that the income being insufficient, they are entitled to have the annual amount due them paid out of principal of the trust.

With respect to their first contention, unless a contrary intent appears in the will, all annual payments out of income in case of a deficiency abate ratably: *Appeal of Trustees of the University of Pennsylvania,* 97 Pa. 187, 200. Appellants argue that since the testator used the words "I give and bequeath" when making the bequest to them and "The said trustees shall pay" when making the bequest to the Calvary Methodist Episcopal Church, he had in mind different results and that they should be preferred in that the annual amounts to them should be paid before the annual amounts to the church. We disagree with such conclusion. Neither this language nor any other portion of the will shows that the testator intended any discrimination between the individual beneficiaries and the church with respect to priority of payment. It would be pure speculation to reach such a conclusion on so unsubstantial a distinction.

The bequests are not exactly alike. One difference is the church is given a larger amount and a provision is made for a payment of a portion of that amount to the minister. But these differences lead us nowhere. We therefore decide that the lower court correctly dismissed the exception based on this ground.

Turning to the second contention, the testator clearly directed that the payments in question were to

be made out of *income* when he said, "to pay the *income accruing on said securities. . .*". In this connection the words of Mr. Justice JONES in *MacMackin Estate,* 356 Pa. 189, 192, 193 (1947), 51 A.2d 689, are appropriate: "The appellant, in ascribing error to the action of the court below in such regard, stresses and relies wholly upon the fact that, in making the bequests of the annual sums to the individuals named in the will, the testator spoke, in that connection, of payment 'from the income' or 'out of the income' of the trust estate. If that were the extent of the decedent's testamentary words and intendment with respect to the character of the bequests, it would at once have to be conceded that they carried with them no more than a right to participate *pro tanto* in distributions of income annually derived from the trust estate and that, therefore, they were not annuities in the strict legal signification of that term." Such was the "extent of decedent's testamentary words" in the present case. Unlike the situation in *MacMackin Estate,* supra, this testator never referred to the bequests as annuities. An examination of the will does not show any other words which indicate that the testator intended the payment to be made out of the principal.

Appellants, to sustain their position that they are entitled to have the deficiency made up from the corpus, point to the following language at the end of paragraph Fourth of the will: "If, at the time of the death of the last survivor of the said personal legatees, and after the payment of the sums provided to the residuary legatees in said trust fund, there should be remaining in the said fund any balance, then and in that event, I direct that the said balance be paid to the said Church Union Of The Methodist Episcopal Church Of Pittsburgh, Pennsylvania." This sentence is of little help to the appellants. The phrase "after the payment of the sums

provided to the residuary legatees" obviously does not refer to the appellants whom testator mentioned in the previous phrase as "personal legatees" but, on the other hand, refers to those charities which are given lump sum payments at the death of Miss McIntyre and Alma Heazelton. There might be some force in appellants' argument if the sentence under discussion read, "If, at the time of the death of the last survivor of the said personal legatees, and after the payment of the sums provided *to them and* to the residuary legatees, then and in that event, etc.". But the added italicized words significantly do not appear. We cannot find in paragraph Fourth or elsewhere in the will any intent expressed or implied that would justify the invasion of corpus to pay appellants' legacies.

Order affirmed. Costs to be paid by appellants.